IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

COMMONWEALTH PORTS AUTHORITY,

                Plaintiff,

v.

LEO A. DALY COMPANY,

                Defendant.

Case No. 1:12-CV-00005

**OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

      This matter regards defendant Leo A. Daly Company's ("Daly") allegedly deficient performance on a contract with plaintiff Commonwealth Ports Authority ("Ports Authority"). This performance also implicates the Commonwealth of the Northern Mariana Islands ("Commonwealth") building code and Consumer Protection Act. Specifically before the Court now is Ports Authority's motion for partial summary judgment on claims alleging that Daly breached its contract, violated the Commonwealth building code, and violated the Consumer Protection Act. (ECF No. 53.) Having reviewed the briefs and considered the arguments of counsel, the Court DENIES the motion and also grants summary judgment in favor of Daly on the Consumer Protection Act claims.

### I. BACKGROUND

      Ports Authority contracted with Daly in 2003 "for the design and construction management of a project involving improvements of the West Tinian Airport facility . . . ." (ECF No. 1 at ¶ 8

1

(hereinafter "Complaint").) Ports Authority now sues Daly for claims arising from its performance of this contract, alleging Daly breached contractual, professional, and statutory duties. (*See id.* at ¶ 1.) The complaint alleges six claims: breach of contract, professional malpractice, negligence, fraud, Consumer Protection Act violations, and building code violations. Only three of these claims—breach of contract, building code, and Consumer Protection Act—are relevant to this motion. (*See* ECF No. 53 at 1.)

## II.　JURISDICTION

The Court has subject matter jurisdiction over the claims in the complaint pursuant to 28 U.S.C. § 1332 (diversity jurisdiction).

## III.　STANDARD

On a Rule 56 motion for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering the motion, "[t]he court must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549–50 (9th Cir. 1994). Additionally, it must view the evidence "in the light most favorable to the opposing party." *Mourning v. Family Pubs. Serv., Inc.*, 411 U.S. 356, 382 (1973) (internal quotation marks omitted).

The moving party bears the initial burden of identifying "particular parts of materials in the record" that "demonstrate the absence of a genuine issue of material fact." Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "When the moving party also bears the burden of persuasion at trial, . . . it must show that 'the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008). If the moving

party meets this burden, the non-moving party must then do similarly, except to demonstrate that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c)(1); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Finally, on a motion for partial summary judgment, a court has the discretion to deny the motion, "[e]ven if the court believes that a fact is not genuinely in dispute . . . ." *E.g.*, Fed. R. Civ. P. 56, Committee Notes on Rules—2010 Amendment, Subdivision (g) ("[The court] may properly decide that the cost of determining whether some potential fact disputes may be eliminated by summary disposition is greater than the cost of resolving those disputes by other means, including trial."); *see also Powell v. Radkins*, 506 F.2d 763, 765 (5th Cir. 1975).

## IV.  DISCUSSION

Ports Authority seeks summary judgment on three claims: breach of contract, violation of the Commonwealth building code, and violation of the Consumer Protection Act. (*See* ECF No. 53 at 1.) The Court analyzes each in turn.

### A. BREACH OF CONTRACT

Daly was contractually "responsible for professional quality, technical accuracy, and the condition of all services [it] furnished" under the contract between it and Ports Authority for the airport project. (ECF No. 53-4 at 14; *see also* Motion at 6.) These services included "architectural/engineering design and construction management . . . ." (ECF No. 53-4 at 1.)

Ports Authority seeks summary judgment on Daly's liability for breaching its contractual duties of design and construction management. (ECF No. 53 at 2.) To show breach, Ports Authority argues that Daly's design and construction violated both the Americans with Disabilities Act (hereinafter "ADA") and the Commonwealth building code. Ports Authority is not claiming a

3

separate cause of action under the former statute. (ECF No. 61 at 6 (hereinafter "Reply"); *see generally* Complaint.)

### 1. ADA Violations

With the ADA violations, Ports Authority argues that these violations establish Daly's breach of its design and construction management duties. (*See* Motion at 7–8.) It attaches the declaration of Richard Cody, an experienced designer in Saipan, detailing the airport terminal's numerous ADA violations. (*See* ECF No. 53-5.)

Ports Authority fails to satisfy its initial burden of proof with respect to both Daly's design and construction management duties. With the former duties, Cody's declaration assesses only the actual construction, not the design. (*See id.* at ¶ 3.) Even if Ports Authority did meet its initial burden, Daly demonstrated through the declaration of Gary Koyama, a senior architect in Hawaii, a genuine issue of material fact by presenting evidence that the alleged ADA violations do not appear in Daly's design. (Opposition at 3; ECF No. 58-5.)

With Daly's construction management duties, Ports Authority concedes that at least some of the ADA violations were outside Daly's scope of work. (*Compare* Opposition at 4–5 *with* Reply at 5.) However, Ports Authority argues that other violations were within Daly's scope. (Reply at 5, 7–8.) And because Daly argues only that its designs do not violate the ADA, Ports Authority continues, Daly effectively concedes that the resulting construction violates the ADA. (*Id.* at 7–8.)

Even if Daly concedes the construction does not comply with the ADA, this is not the same as conceding that Daly breached its construction management duties. It is unclear what those duties entailed. Ports Authority provides no evidence indicating the contract intended Daly, as construction manager, be strictly liable for any ADA violations in the resulting construction. Nor does Ports

4

Authority provide any evidence on Daly's construction management efforts. (ECF No. 76 at 4 (hereinafter "Surreply").) Instead Ports Authority states, without citing any evidence, that Daly failed to make minimally adequate professional inspections. (Reply at 5.) This fails to satisfy Ports Authority's initial burden of proof.

### 2. Building Code Violations

Ports Authority argues that Daly breached its design and construction management duties by producing a design that did not comply with the Commonwealth building code and then by allowing that design to be constructed. (Motion at 9.) Supporting these allegations is the declaration of Terangue Gillham, a professional engineer, who finds "a minimum of 20 code violations in [Daly's design] . . . ." (ECF No. 54 at 3.)

For all violations but one, Ports Authority has not met its initial burden. Gillham does not conclude that Daly's design produced at least 20 violations of the Commonwealth building code. Rather, he concludes that Daly's design produced at least 20 violations of the following codes: the 1997 Uniform Building Code, the Los Angeles City Department of Building and Safety checklist, the 1999 American Concrete Institute 318-99, Portland Cement Association "Notes on ACI 318-99 with Design Applications," and "Seismic Design of Reinforced Concrete Special Moment Frames." (ECF No. 54 at ¶¶ 4–5; *see also* ECF No. 54-2 at 000003.) Ports Authority and Daly indicated that the Commonwealth building code implements the 1997 Uniform Building Code.[1] Yet it remains

---

[1] Both Ports Authority and Daly's briefs treat the 1997 Uniform Building Code as controlling. (*See, e.g.*, Motion at 6; Opposition at 10; Reply at 13.) Additionally, at this motion's hearing, Ports Authority's counsel indicated that there was no dispute that the 1997 Uniform Building Code is the law implemented by the Commonwealth building code. That code reads: "Except as otherwise provided by this code, all design, construction, enlargement, removal, and use of any building or structure within the Northern Mariana Islands . . . shall conform to the requirements of Parts II, III, IV, V, VI, VII, VIII, IX, X, XI and Appendix, or any subsequent amendments thereto, of the 1988 edition of the Uniform Building Code . . . ." 2 CMC § 7142.

5

1 unclear why these foreign codes and alleged violations of them—such as 20 violations of the Los Angeles building code (ECF No. 54-2 at 0000010)—are relevant to the Commonwealth. It may be that both the Los Angeles and Commonwealth building codes are based on the 1997 Uniform Building Code, but the report neither definitively indicates this nor illuminates how the Los Angeles and Commonwealth codes may differ. Thus, a genuine issue remains as to what exact Commonwealth building code provisions were violated.

With one violation, Ports Authority has met its initial burden, but Daly satisfactorily satisfies its own burden of proving the existence a genuine issue of material fact. Ports Authority provides evidence that "[Daly]'s design plans, in fact, do not detail the frames as Special Moment Resisting Frames, as required by the 1997 [Uniform Building Code] for seismic resistance using moment resisting frames alone in Seismic Zones 3 and 4." (*See* ECF No. 54 at ¶ 4; *see also id.* at ¶ 5.)

Daly provides contradictory evidence in the declaration of James Walfish, an independent consultant who provided engineering and design services to Daly. (ECF No. 59 at ¶¶ 1–2.) Walfish's work for Daly included serving as "the structural engineer of record for the Tinian [airport] Project . . . ." (*Id.* at ¶¶ 3, 5.) In this role, he "prepared certain preliminary calculations and structural plans, including preparing the West Tinian Airport Terminal Improvements Structural Calculations . . . ." (*Id.* at ¶ 3.) Walfish states that "[t]o the best of [his] knowledge, the design and detailing reflected in the attached Structural Calculations met or exceeded all applicable code requirements and sound engineering practice, including meeting or exceeding all seismic requirements." (*Id.* at ¶¶ 6–7.)

Ports Authority contends that Walfish's conclusions regarding the preliminary calculations and plans apply equally to the final design. (Reply at 10.) It argues that the plans Walfish reviewed "were final and were the same plans that were actually used in construction." (*Id.*) For support, Ports Authority offers the evidence of Gillham, who declares that he found Walfish's design and the

6

designs "marked AS-BUILT . . . to be identical in terms of content pertaining to the structural design of the facility, and more particularly to the content that pertains to the seismic lateral load resisting system." (ECF No. 64 at ¶ 7.)

Ports Authority argues that this evidence means that Daly's design did not comply with the Commonwealth building code. (Reply at 10.) But what it actually does is demonstrate a genuine issue of material fact. Walfish concludes that the designs he examined complied with the code, and Gillham concludes that these documents are the same as the final design. Accordingly, there is a genuine issue of material fact as to whether the final design complies with the Commonwealth building code's seismic requirements, and summary judgment is improper.

### B. BUILDING CODE VIOLATIONS

Ports Authority seeks summary judgment on its independent claims for building code violations. (Motion at 8–10.) The Court denies summary judgment here for the same reasons as it denied summary judgment on the breach of contract claims based on building code violations.

### C. CONSUMER PROTECTION ACT

Ports Authority seeks summary judgment on the claims that Daly violated the Commonwealth Consumer Protection Act. (*See* ECF No. 53 at 1; *see also* Reply at 17.) Resolving this issue requires interpreting Commonwealth law in an area where the Commonwealth Supreme Court has not yet ruled. Here, this Court "must make a reasonable determination of the result the highest state court would reach if it were deciding the case." *Med. Lab. Mgmt. Consultants v. Am. Broad. Cos.*, 306 F.3d 806, 812 (9th Cir. 2002) (internal quotation marks omitted).

A reasonable determination of how the Commonwealth Supreme Court would rule is that Ports Authority lacks standing to sue for Consumer Protection Act violations. The Consumer

Protection Act explicitly exempts Commonwealth agencies. 4 CMC § 5106 ("Nothing in this article shall apply to: (a) Actions or transactions carried out by the Commonwealth government, any branch thereof or any other governmental agency . . . .").

Even without this exemption, the Act still would not apply to Ports Authority. It protects only "person[s] aggrieved as a result of a violation of this article . . . ." *Id.* § 5112(a). A "person" is defined as "natural persons, corporations, firms, partnerships, joint stock companies, and associations or other organizations of persons." *Id.* § 5104(g). This definition is limited to actual persons and any limited liability entities they form. Though government agencies contain persons, they are not an organization of persons. That phrase implies persons acting in the interest of the organization. But in government agencies, persons ultimately act not in the interest of the agency, but in the interest of the people.

Confirming this conclusion is the statute's legislative history, stating that consumers are both the "general public" and "merchants themselves." *Id.* § 5102(a)(4). Governmental agencies are neither. Further, the Act expressly distinguishes the government from consumers. *See id.* § 5103(a) ("declar[ing] that [the] government can best advance the interests of consumers by facilitating the proper functioning of the free enterprise market economy"). This demarcation indicates the government or its agencies is not a consumer to be protected by the Consumer Protection Act, but instead an overseer charged with protecting consumers.

The Court notes the existence of a Commonwealth Superior Court decision concluding that Commonwealth agencies can sue for Consumer Protection Act violations, *see Commonwealth of the Northern Mariana Islands v. AIC Marianas, Inc.*, Civ. No. 10-0262A (N. Mar. I. Commw. Super. Ct. Apr. 24, 2012), but does not find its reasoning persuasive. There, the court held that the statutory definition of persons included Commonwealth agencies. *Id.* at 6. The court reasoned that a portion of

person's definition, "other organizations of persons," was ambiguous, amenable to being interpreted as "other class of consumers." *Id.* at 4. Finding the statute ambiguous, the court invoked policy and concluded that interpreting persons to include Commonwealth agencies favors the Act's legislative intent of protecting consumers. *See id.* at 5–6, 8 (reasoning that the "Commonwealth is the most prominent consumer in this jurisdiction" and that excluding it from Consumer Protection Act claims would have "an exceptionally grave, negative impact on the CNMI's market stability").

In justifying this policy-based conclusion, the superior court relied on a Commonwealth Supreme Court decision construing a different statute's definition of "person" as including Commonwealth agencies. *See id.* at 6. That statute regarded judicial review, appearing to strip courts of judicial review of administrative decisions where the party seeking such review is an agency. *See N. Marianas College v. Civil Serv. Comm'n*, 2006 MP 4, ¶¶ 15–16. The supreme court's holding that persons in this context included agencies was motivated both by another statutory provision indicating that agencies were entitled to judicial review of administrative decisions and a heavy presumption in favor of judicial review. *See id.* at ¶¶ 13–14, 16–19. Neither reasoning applies here, and this Court believes it a reasonable determination that the Commonwealth Supreme Court would find the Consumer Protection Act's text controlling.

Because the Ports Authority lacks any legal claim under the Consumer Protection Act, the Court denies summary judgment in its favor and instead grants it in favor of Daly. District courts have the power to "grant[] summary judgment *sua sponte* . . . . when 1) no material dispute of fact exists, and 2) the losing party has had an adequate opportunity to address the issues involved, including adequate time to develop any facts necessary to oppose summary judgment." *Fuller v. City of Oakland*, 47 F.3d 1522, 1533 (9th Cir. 1995). Here, Ports Authority has briefed this issue (*see*

Reply at 13–15), and there are no facts capable of granting Ports Authority standing to sue under the Act. Accordingly, the Court can and does grant summary judgment in favor of Daly on these claims.

### V. CONCLUSION

For the foregoing reasons, the Court denies Ports Authority's motion for partial summary judgment in entirety and grants summary judgment in favor of Leo Daly on the Consumer Protection Act claims.

SO ORDERED this 16th day of May, 2013.

                                              RAMONA V. MANGLONA
                                              Chief Judge